Isaac D. Zorea
Law Office of Isaac Derek Zorea
P.O. Box 90844
Anchorage, AK 99509
(907) 830-1385
(800) 536-1071 facsimile

IN THE SUPERIOR COURT FOR THE STATE OF ALASKA
THIRD JUDICIAL DISTRICT AT ANCHORAGE

SHEILA LITTLE,
　　　　　　COMPLAINANT,

VS.

STATE OF ALASKA; ALASKA VETERANS & PIONEER
HOME; JOSH SHAVER (individually and in Official
capacity); HEATHER BRINSON (individually and in
Official capacity); DAWN GORDON (individually and
in Official capacity),
　　　　　　RESPONDENT.

3AN-25-00-08617CI

## COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

COMES NOW, Sheila Little, the plaintiff above named, by and through her attorney, Isaac Derek Zorea, and respectfully alleges and states as follows:

## I. INTRODUCTION AND JURISDICTION

1. This action arises from a systematic and continuing campaign of retaliation, discrimination, and harassment against Plaintiff Sheila Little, a dedicated registered nurse with over 13 years of exemplary service to the State of Alaska, after she fulfilled her legal obligations as a mandatory reporter by filing Adult Protective Services reports concerning patient neglect and unsafe conditions, with said violations continuing through her September 2024 constructive discharge.

COMPLAINT FOR DAMAGES: LITTLE V. SOA, ET AL.　　　　　　PAGE - 1 -

2. This Court has jurisdiction over federal claims under 28 U.S.C. §§ 1331, 1343, and 42 U.S.C. § 1983, and supplemental jurisdiction over state claims under 28 U.S.C. § 1367.

## II. PARTIES

3. Plaintiff Sheila Little is a registered nurse who was employed by the State of Alaska from 2010 through September 2023, with the final period of employment at Alaska Veterans & Pioneer Home in Palmer, Alaska.

4. Defendant State of Alaska is a governmental entity that employed Plaintiff and is responsible for the acts and omissions of its employees and agents acting within the scope of their employment.

5. Defendant Alaska Veterans & Pioneer Home is a state-operated facility within the Alaska Department of Health and Social Services where Plaintiff was employed from October 2022 through September 2023.

6. Defendant Josh Shaver was, at all relevant times, the Administrator of Alaska Veterans & Pioneer Home, acting under color of state law and within the scope of his employment with the State of Alaska.

7. Defendant Heather Brinson was, at all relevant times, a Registered Nurse IV at Alaska Veterans & Pioneer Home, acting under color of state law and within the scope of her employment with the State of Alaska.

8. Defendant Dawn Gordon was, at all relevant times, a registered nurse at Alaska Veterans & Pioneer Home, acting under color of state law and within the scope of her employment with the State of Alaska.

9. Prior to her transfer to Alaska Veterans & Pioneer Home, Plaintiff witnessed serious patient safety violations at Alaska Psychiatric Institute when she observed her "unit manager and other supervisory and administrative nurses hold down a young girl during the admit process and rip her underwear off her" and

COMPLAINT FOR DAMAGES: LITTLE V. SOA, ET AL.                    PAGE - 2 -

subsequently "captured an e-mail thread where they were discussing it, trying to justify it, and lying about backdating the policy."

10. Following her reporting of this patient assault, Plaintiff was subjected to constant harassment and monitoring at API, with management being "constantly on me so I transferred to the vet home and it was even worse," establishing a pattern of retaliation that would continue and escalate throughout her subsequent employment.

## III. FACTUAL BACKGROUND

**A. Continuing Pattern of Constitutional and Statutory Violations (April 2023 - September 2024)**

9. Beginning on April 8, 2023, when Plaintiff questioned staff responsibility as mandatory reporters to Adult Protective Services, and continuing through September 16, 2024, when the State notified Plaintiff that she had "lost non-competitive rehire rights" and was "temporarily lost eligibility to apply for State of Alaska positions," Defendants engaged in a systematic and continuing pattern of retaliation that constitutes ongoing violations of Plaintiff's federal and state rights.

10. This continuing campaign of retaliation encompasses multiple interconnected violations including First Amendment retaliation, ADA discrimination, FMLA interference, and intentional infliction of emotional distress, all designed to punish Plaintiff for her protected mandatory reporting activities and ultimately force her constructive discharge.

**B. Plaintiff's Exemplary Service Record and Initial Protected Activity (2010-2023)**

11. From 2010 to October 2022, Plaintiff worked at Alaska Psychiatric Institute with consistently excellent performance evaluations, receiving ratings of "HIGH ACCEPTABLE" across all categories, with her 2020 evaluation noting that "Ms. Little's performance reveals exceptional understanding and job skills, she is often requested as a preceptor for new nurses orientation fo night shift."

COMPLAINT FOR DAMAGES: LITTLE V. SOA, ET AL. PAGE - 3 -

12. On October 17, 2022, Plaintiff transferred to Alaska Veterans & Pioneer Home with "excellent references and the highest marks on work performance evaluations," yet was immediately subjected to unsafe working conditions and initial hostility that would later escalate into systematic retaliation.

13. On April 8, 2023, Plaintiff questioned staff responsibility as mandatory reporters to Adult Protective Services regarding a resident who had become withdrawn, depressed, and stopped eating/drinking for approximately two months, severely affecting their health, with a colleague responding "she had been wondering about that, too."

14. Subsequently, Plaintiff filed formal APS reports regarding a patient who was "allowed to starve for two months without a consult to help her" and a diabetic patient who was "denied expedient care of a foot wound so that his rotted toe came off in my hand and his foot allowed to turn black," with the ER physician being "outraged" by the patient's condition.

C.   **Immediate and Continuing Retaliation Following Protected Activity (April 2023–September 2024)**

15. Just 16 days after Plaintiff's mandatory reporting inquiry on April 8, 2023, Josh Shaver personally issued the first in a continuing series of retaliatory disciplinary actions by issuing a Letter of Instruction on April 24, 2023, establishing the beginning of a pattern that would continue for over seventeen months.

16. The retaliatory campaign escalated and continued through June 8, 2023, when the State filed a nursing board complaint alleging Plaintiff was "practicing while afflicted with a mental illness," July 5, 2023, when Shaver issued a Pre-Determination Meeting notice seeking termination, her constructive discharge in September 2023, and culminating in the September 16, 2024 notification that she had permanently lost rehire rights.

COMPLAINT FOR DAMAGES: LITTLE V. SOA, ET AL.                    PAGE - 4 -

17. Carol Meinen, RNIII and Head of Training, provided evidence of the systematic targeting by warning Plaintiff to "watch my back because they are constantly monitoring me" and telling her "they were gunning for me," demonstrating management's deliberate surveillance and ongoing campaign against Plaintiff.

**D.     Continuing Denial of ADA Accommodations and FMLA Interference (April 2023-September 2024)**

18. On April 23, 2023, Plaintiff formally requested reasonable accommodation through division of her 5/8 shift into 3/12 shifts like other nurses received, to manage her FMLA-covered medical condition that had been successfully managed for over 10 years on 3/12 shifts at Alaska Psychiatric Institute.

19. Josh Shaver personally participated in the continuing denial process, making derogatory statements that Plaintiff was "just too feeble for the assignment" while knowing that her medical condition required reasonable accommodations, demonstrating ongoing disability discrimination.

20. RNIV Heather Brinson directly participated in the continuing FMLA interference by denying Plaintiff's accommodation request, falsely claiming "the state won't allow it" despite contradictory information from HR liaison Evan Crow, and threatening "If you can't be here 5 days, then you won't be here 3 days."

21. The continuing discriminatory denial was exposed as pretextual when, after Plaintiff's resignation, her "5/day-8/hr shift was immediately offered as a split shift," proving the accommodation was always available and the denial was part of the ongoing retaliatory scheme.

**E.     Systematic Harassment and Hostile Work Environment (November 2022-September 2024)**

22. Beginning in November 2022 and continuing through Plaintiff's constructive discharge and beyond, Dawn Gordon engaged in a systematic harassment campaign, making false statements that Plaintiff was "sitting out in my

COMPLAINT FOR DAMAGES: LITTLE V. SOA, ET AL.                    PAGE - 5 -

car more than I was on the floor," was "so drunk that I could barely walk and reeked of alcohol," and had "two bottles of vodka in my purse," creating immediate workplace isolation where "no one would speak to me or even look at me."

23. The harassment escalated to physical confrontation on April 24, 2023, when Gordon was "yelling angrily and spitting in my face" while Plaintiff was caring for a dying patient and his family, yet management's response was to discipline Plaintiff for defending herself while Gordon faced no consequences, demonstrating the systematic nature of the hostile work environment.

24. Management's deliberate indifference to the ongoing harassment, combined with their retaliatory discipline of Plaintiff for defending herself, created a continuing hostile work environment that persisted throughout her employment and contributed to her ultimate constructive discharge.

**F. Continuing Health Consequences and Constructive Discharge (April 2023-September 2024)**

25. The continuing pattern of retaliation, discrimination, and harassment caused severe and ongoing health consequences, including a 47-pound weight loss over six months, inability to follow prescribed medical treatment for her FMLA-covered condition, and forced abandonment of PTSD therapy due to work-related exhaustion.

26. The deliberate maintenance of intolerable working conditions created a continuing constructive discharge scenario that persisted from April 2023 until Plaintiff was forced to resign under duress in September 2023, explicitly stating "I am resigning under duress because this is about retaliation for filing an APS report."

27. On August 28th, Plaintiff's final day of employment, she was deliberately subjected to systematic humiliation when she "arrived to work and was called out of report to my manager's office" where Jamie Neuman told her she was "guilty of

COMPLAINT FOR DAMAGES: LITTLE V. SOA, ET AL.                    PAGE - 6 -

everything they charged me with and that she was sending me home until I filed for, and was granted ADA accommodation."

28. As part of the systematic campaign to force her resignation, Plaintiff was ordered to "go stand in the Wintergarden," described as "a huge glass atrium in the center of the building" where "at shift change, both shifts come through that room," forcing her to endure over an hour of public humiliation where she understood she was "being put on display to humiliate me."

29. The constructive discharge culminated in false substance abuse allegations, where Defendants accused Plaintiff of being "under the influence" based solely on the fabricated observation that she "couldn't be still and I looked around a lot" while waiting in the atrium, with Jamie Neuman threatening that she "would be arrested if I tried to leave the building at all" and giving her the ultimatum to "resign or be arrested."

30. Supervisor Sabrina Partridge witnessed this systematic abuse and explicitly recognized its retaliatory nature, calling out "Didn't all of this begin when you reported them for assaulting that patient?" confirming the direct causal connection between Plaintiff's protected patient safety reporting and the escalating retaliation campaign.

**False Substance Abuse Allegations**

31. Defendants' false accusations violated API's own policies by failing to immediately notify Plaintiff of suspected impairment, deliberately excluding shift supervisors who would have contradicted their false assessment, and basing their claims solely on normal behavior while she waited over an hour in the atrium.

32. Despite Plaintiff engaging with "at least 4 supervisors and a lot of fellow employees" during her time in the Wintergarden, "nobody thought there was anything wrong with me," yet Jamie Neuman and her subordinate "sat upstairs watching me

COMPLAINT FOR DAMAGES: LITTLE V. SOA, ET AL. PAGE - 7 -

on camera and convincing themselves that walking around to look at the art in the room proved I was under the influence."

**Union Abandonment and Systemic Failure**

33. The systematic nature of Defendants' retaliation is further evidenced by the union's abandonment of Plaintiff after the business agent promised to "file a grievance to get your job back and get you made whole," stating "what she did was not just against policy but against the law," but subsequently admitting "he forgot to file for the extension," leaving Plaintiff without representation despite "all those years of union dues" and being "dropped like a dirty kleenex."

34. The constructive discharge continued beyond her resignation through the State's ongoing punishment, culminating in the September 16, 2024 notification that she had "lost non-competitive rehire rights" and was "temporarily lost eligibility to apply for State of Alaska positions," demonstrating the continuing nature of Defendants' retaliatory conduct.

**G.    Evidence of Systematic Targeting and Bad Faith (April 2023-September 2024)**

35. Josh Shaver was ultimately terminated from his position, with Plaintiff reporting that "it is believed to be due to my complaint to Evan that they retaliated against me for filing the APS reports," confirming that his retaliatory conduct was recognized as improper by the State yet the retaliation continued through other agents.

36. The systematic nature of Defendants' conduct is evidenced by the temporal proximity of adverse actions following protected activity, the escalating pattern of discipline, the denial of accommodations routinely provided to others, and the continuing punishment even after Plaintiff's resignation and Shaver's termination.

COMPLAINT FOR DAMAGES: LITTLE V. SOA, ET AL.                                    PAGE - 8 -

37. The retaliatory nature of Defendants' conduct was explicitly recognized by senior supervisor Sabrina Partridge, who witnessed the final constructive discharge incident and "called out 'Didn't all of this begin when you reported them for assaulting that patient?'" providing direct contemporaneous evidence of the causal connection between Plaintiff's protected reporting and the systematic retaliation campaign.

38. Management used video surveillance specifically to find disciplinary opportunities against Plaintiff, with her being told they were "watching me on the camera looking for opportunities to discipline me," demonstrating the deliberate and continuing nature of their targeting.

## IV. CONTINUING VIOLATION DOCTRINE

39. Defendants' conduct constitutes continuing violations under federal law because their retaliatory and discriminatory actions were part of an ongoing pattern of conduct that persisted from April 2023 through September 2024, with each act flowing from the initial protected activity and reinforcing the overall discriminatory scheme.

40. The systematic nature of Defendants' conduct, the temporal proximity of various adverse actions spanning over seventeen months, and the recurring pattern of retaliation establish that Plaintiff was subjected to single, continuing courses of conduct rather than discrete, time-barred acts.

41. Under the continuing violation doctrine, all of Defendants' conduct from April 8, 2023 forward is actionable, as it was part of systematic patterns that continued through and beyond Plaintiff's filing date, including the September 16, 2024 notification of lost rehire rights.

/

/

COMPLAINT FOR DAMAGES: LITTLE V. SOA, ET AL.                    PAGE - 9 -

## V. CAUSES OF ACTION

### COUNT I: CIVIL RIGHTS VIOLATION (42 U.S.C. § 1983) – FIRST AMENDMENT RETALIATION

42. Plaintiff incorporates all previous allegations above, and further plead the following:

43. Defendants engaged in a continuing pattern of retaliation against Plaintiff's protected speech concerning patient safety and Adult Protective Services reporting, with each retaliatory act flowing from and reinforcing the systematic effort to punish her protected reporting activities.

44. Josh Shaver personally retaliated against Plaintiff's protected speech by issuing a Letter of Instruction on April 24, 2023, just 16 days after her April 8, 2023 inquiry about mandatory reporting responsibilities, demonstrating his direct personal involvement in violating her First Amendment rights and beginning a pattern of continuing retaliation.

45. Josh Shaver escalated his First Amendment retaliation by personally signing a Pre-Determination Meeting notice on July 5, 2023, seeking termination for alleged failure to follow safe nursing practices, unprofessional communication, and medication tracking failures, representing a systematic campaign to silence Plaintiff's protected speech about patient safety.

46. Heather Brinson directly participated in the continuing First Amendment retaliation by denying Plaintiff's accommodation requests and threatening "If you can't be here 5 days, then you won't be here 3 days" in direct response to Plaintiff's protected APS reporting activities, demonstrating her personal involvement in punishing protected speech.

47. Dawn Gordon engaged in a continuing campaign of harassment and defamation as part of the systematic retaliation for Plaintiff's protected speech, making false statements designed to create a hostile work environment and chill her

COMPLAINT FOR DAMAGES: LITTLE V. SOA, ET AL.                    PAGE - 10 -

exercise of First Amendment rights, with the harassment continuing throughout her employment.

48. Jamie Neuman personally orchestrated the systematic violation of Plaintiff's constitutional rights by calling her from report to the manager's office, delivering the ultimatum regarding ADA accommodation, ordering her public humiliation in the Wintergarden, personally making false substance abuse allegations based on camera surveillance, and threatening arrest if she attempted to leave, demonstrating her direct personal involvement in the constitutional violations.

49. Neuman's conduct was specifically designed to maximize emotional harm, including the deliberate public display during shift change, exclusion of supervisors who would have contradicted her false assessment, and the calculated threat of arrest and professional destruction, all in direct retaliation for Plaintiff's protected patient safety reporting activities.

50. The continuing violation began on April 24, 2023, with Josh Shaver's Letter of Instruction and persisted through September 16, 2024, with the State's notification of lost rehire rights, demonstrating an unbroken pattern of First Amendment retaliation spanning over seventeen months.

51. Each individual defendant participated in the continuing violation through their personal involvement in escalating disciplinary actions, denial of accommodations, and maintenance of a hostile work environment designed to chill Plaintiff's exercise of First Amendment rights and ultimately force her constructive discharge.

**COUNT II:   FMLA INTERFERENCE (29 U.S.C. § 2615)**

52.  Plaintiff incorporates all previous allegations, and makes the following allegations.

COMPLAINT FOR DAMAGES: LITTLE V. SOA, ET AL.                    PAGE - 11 -

53. Defendants engaged in a continuing pattern of FMLA interference through their systematic denial of scheduling accommodations necessary for FMLA leave usage, imposition of discriminatory documentation requirements, and ongoing maintenance of work conditions that prevented Plaintiff from managing her FMLA-covered medical condition.

54. Plaintiff is an eligible employee under the FMLA, having been employed by Defendants for more than 12 months and having worked more than 1,250 hours, with her serious health condition qualifying for FMLA protection as evidenced by her approved FMLA coverage effective July 2, 2021.

55. For over 10 years at Alaska Psychiatric Institute, Plaintiff successfully managed her FMLA-covered condition using a 3-day/12-hour shift schedule that allowed her to follow her prescribed medical treatment regimen during her days off, demonstrating the feasibility and necessity of the accommodation.

56. Josh Shaver, as Administrator with final authority over scheduling decisions, personally participated in the continuing denial process and made derogatory statements about Plaintiff's medical condition while knowing that maintaining her in the 5/8 assignment made it impossible for her to follow her prescribed medical management program.

57. RNIV Heather Brinson directly interfered with Plaintiff's FMLA rights through continuing discriminatory conduct, personally denying her accommodation request, falsely claiming "the state won't allow it" and threatening "If you can't be here 5 days, then you won't be here 3 days."

58. The continuing FMLA violations began with the denial of reasonable scheduling modifications in April 2023 and persisted through ongoing discriminatory treatment, ultimate constructive discharge, and continued professional punishment through the September 2024 loss of rehire rights.

COMPLAINT FOR DAMAGES: LITTLE V. SOA, ET AL.                    PAGE - 12 -

59. Defendants imposed continuing discriminatory requirements specifically targeting Plaintiff's FMLA usage, including requiring doctor's notes for all FMLA-covered absences while not imposing this requirement on other employees with higher absence rates who were not FMLA-covered, demonstrating systematic targeting based on her medical condition.

60. The pretextual nature of Defendants' continuing FMLA interference is evidenced by the immediate availability of split shifts to other employees after Plaintiff's resignation, proving that the accommodation was readily available and had been deliberately denied to punish her for her protected reporting activities.

61. As a direct result of Defendants' continuing interference with her FMLA rights, Plaintiff was forced to "give up trying to follow this program and I am suffering the consequences," losing 47 pounds in six months, being unable to participate effectively in prescribed PTSD therapy, and ultimately suffering constructive discharge.

62. Defendants' actions constitute willful interference with Plaintiff's FMLA rights in violation of 29 U.S.C. § 2615, including denying reasonable accommodation necessary for FMLA leave usage, creating a continuing hostile work environment based on her medical condition, imposing discriminatory terms and conditions on her FMLA usage, and continuing retaliation against her for exercising FMLA rights even after her resignation.

**COUNT III: ALASKA CIVIL RIGHTS ACT VIOLATION (AS 18.80.220)**

63. Plaintiff incorporates all previous allegations.

64. Josh Shaver personally engaged in continuing disability discrimination by making derogatory statements about Plaintiff's medical condition and denying reasonable accommodations, demonstrating deliberate hostility toward her disability-related needs and violating Alaska's prohibition against discriminatory

treatment based on disability.

65. RNIV Heather Brinson directly violated Alaska's civil rights protections through continuing discriminatory conduct, personally denying Plaintiff's accommodation request with false justifications and threats, showing deliberate discriminatory intent based on Plaintiff's disability status.

66. The continuing discriminatory conduct occurred in direct temporal proximity to Plaintiff's protected APS reporting activities, demonstrating that Defendants' discrimination was motivated by both disability animus and retaliation for protected reporting activities in violation of AS 18.80.220.

67. Defendants created a continuing pattern of state civil rights violations by maintaining Plaintiff in conditions they knew caused documented health deterioration while routinely providing accommodations to other employees without disabilities, demonstrating deliberate disparate treatment prohibited under Alaska law.

68. The continuing violations of Alaska civil rights law extended beyond Plaintiff's employment through the State's ongoing punishment, including the September 16, 2024 notification of lost rehire rights, demonstrating the systematic and ongoing nature of the discrimination.

69. As a direct result of Defendants' continuing discriminatory conduct, Plaintiff suffered severe health deterioration, constructive discharge, and ongoing professional barriers that continue to impact her ability to work in her chosen profession.

**COUNT IV: WRONGFUL CONSTRUCTIVE DISCHARGE**

70. Plaintiff incorporates all previous allegations.

71. Defendants deliberately created and maintained intolerable working conditions over an extended period to force Plaintiff's resignation in violation of

COMPLAINT FOR DAMAGES: LITTLE V. SOA, ET AL. PAGE - 14 -

Alaska public policy protecting mandatory reporters, with each adverse action building upon previous retaliatory conduct in a systematic campaign designed to achieve constructive discharge.

72. Josh Shaver personally created continuing intolerable working conditions through a systematic campaign of retaliation and harassment, including his immediate hostile response to Plaintiff's safety concerns in November 2022, personal issuance of disciplinary actions following her protected activity, and escalation to termination proceedings, demonstrating his direct role in forcing her constructive discharge.

73. Josh Shaver made the working environment continuously intolerable by making derogatory comments about Plaintiff's medical condition while knowing her condition required reasonable accommodations, personally denying standard accommodations available to other employees, and engaging in victim-blaming when she complained of harassment.

74. RNIV Heather Brinson directly contributed to creating continuing intolerable working conditions by personally denying Plaintiff's accommodation requests with threats and false statements, imposing discriminatory requirements specifically targeting her FMLA usage, and creating disparate treatment based on her protected medical conditions.

75. The working conditions became so intolerable that Plaintiff suffered severe physical deterioration, losing 47 pounds in six months, being unable to follow her prescribed medical management program, and being unable to participate effectively in prescribed PTSD therapy, demonstrating the systematic nature of the constructive discharge.

76. The intolerable nature of the working conditions is evidenced by the fact that after Plaintiff's resignation, her work assignment was immediately modified in

COMPLAINT FOR DAMAGES: LITTLE V. SOA, ET AL.                    PAGE - 15 -

ways that had been denied to her, proving that the refusal of reasonable accommodations was deliberately punitive and designed to force her departure.

77. The constructive discharge continued beyond her resignation through ongoing punishment by the State, including the September 16, 2024 notification that she had "lost non-competitive rehire rights," demonstrating that Defendants' campaign to force her departure extended to preventing her future employment.

78. A reasonable person in Plaintiff's position would have felt compelled to resign due to the systematic campaign of retaliation spanning over seventeen months, deliberate creation of impossible working conditions, threats to her professional license, documented health deterioration, denial of standard accommodations available to other employees, and the deliberate maintenance of conditions known to cause physical and emotional harm.

**COUNT V: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

79. Plaintiff incorporates all previous allegations.

80. Josh Shaver personally engaged in extreme and outrageous conduct designed to humiliate and emotionally harm Plaintiff, including immediately firing her in November 2022 when she raised legitimate safety concerns, personally issuing escalating disciplinary actions following her protected reporting activities, and making derogatory comments about her medical condition while maintaining harmful working conditions.

81. Josh Shaver deliberately maintained Plaintiff in a work assignment he knew was causing severe physical and emotional harm, including documented health deterioration, while making derogatory comments about her fitness for duty, showing deliberate intent to cause emotional suffering through humiliation and degradation.

82. Josh Shaver escalated his campaign of emotional abuse by personally forwarding Plaintiff's Letter of Instruction to the Alaska Board of Nursing with false

allegations that she was "practicing while afflicted with a mental illness," deliberately threatening her professional license and livelihood in retaliation for her protected APS reporting activities.

83. Dawn Gordon initiated and maintained a systematic campaign of emotional abuse by making false and defamatory statements to staff, creating immediate workplace isolation, and escalating to physical intimidation including "yelling angrily and spitting in my face" while Plaintiff was providing end-of-life care, demonstrating extreme and outrageous conduct designed to maximize emotional distress.

84. Dawn Gordon continued her emotional abuse campaign by making "seditious statements" that Plaintiff was "totally incompetent" and would "get them all fired," systematically undermining Plaintiff's professional reputation and creating ongoing psychological distress through persistent workplace harassment that continued throughout her employment.

85. The continuing temporal proximity of Defendants' escalating emotional abuse following Plaintiff's April 8, 2023 inquiry about mandatory reporting responsibilities demonstrates their intent to cause severe emotional distress in retaliation for her protected activities, with the campaign continuing through her constructive discharge and beyond.

86. As a direct result of Defendants' intentional and reckless conduct continuing over seventeen months, Plaintiff suffered severe emotional distress including exacerbation of her PTSD symptoms, inability to participate effectively in prescribed trauma therapy, forced abandonment of her prescribed medical management program, and ongoing professional and personal consequences that continue to impact her well-being.

Exhibit A
Page 17 of 21

## VI. JURY REQUEST

87. The Plaintiff, Sheila Little requests a jury as to all issues that permit a trial by jury.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendants as follows:

**A. COMPENSATORY DAMAGES**

1. Economic Damages including documented medical expenses of $12,000 for dentures necessitated by medication side effects that caused "at least 12 teeth have fallen out," two surgeries to save her arm from work-related necrotic infection, and ongoing medical treatment for conditions exacerbated by Defendants' conduct.

2. Economic Damages including lost wages from her constructive discharge, lost benefits, medical expenses for treatment necessitated by Defendants' conduct, and other pecuniary losses resulting from Defendants' continuing violations of federal and state law, within the jurisdictional limits of this court;

3. Future Economic Damages including lost earning capacity, ongoing medical expenses, and professional rehabilitation costs necessitated by Defendants' systematic campaign and continuing punishment through the loss of rehire rights;

4. Emotional Distress Damages flowing from each count, including severe emotional distress caused by systematic harassment and retaliation following protected APS reporting activities, exacerbation of PTSD symptoms requiring additional medical treatment and therapy, humiliation and damage to professional reputation from false accusations of mental illness and alcohol impairment, and loss of enjoyment of life and ability to participate in prescribed trauma therapy;

COMPLAINT FOR DAMAGES: LITTLE V. SOA, ET AL. PAGE - 18 -

5. Emotional Distress Damages including the systematic destruction of Plaintiff's ability to function in her community, forcing her to become "a hermit" because "Jamie Neuman lives in this town and she would most certainly smirk or comment if she came across me," spending "most of my time in the upstairs guest room," and being unable to "support my family" including "2 autistic kids depending on me."

6. Professional Destruction Damages including being "black-listed from state employment," having "someone called the Board of Nursing to make some vague anonymous complaint," and the ongoing destruction of her nursing career and reputation after years of exemplary service.

7. Medical Expenses including costs of additional therapy, medical treatment for work-related stress and health deterioration, ongoing treatment for conditions exacerbated by Defendants' conduct, and future medical costs related to the continuing impact of their systematic misconduct;

**B.    LIQUIDATED DAMAGES**

8. Liquidated Damages under the Family and Medical Leave Act, 29 U.S.C. § 2617, equal to the amount of compensatory damages, for Defendants' willful interference with Plaintiff's FMLA rights over the continuing period of violations;

**C.    PUNITIVE DAMAGES**

9. Punitive Damages against Individual Defendants Josh Shaver, Heather Brinson, and Dawn Gordon in their individual capacities for their willful, wanton, and malicious violations of Plaintiff's constitutional and statutory rights, including deliberate retaliation for protected speech in violation of the First Amendment, intentional discrimination and denial of reasonable accommodations, systematic harassment designed to force resignation, false accusations of mental illness made to the Alaska Board of Nursing, even after Plaintiff's resignation;

COMPLAINT FOR DAMAGES: LITTLE V. SOA, ET AL.                    PAGE - 19 -

**D. INJUNCTIVE AND PROSPECTIVE RELIEF**

10. Reinstatement to an equivalent position with the State of Alaska with full restoration of benefits, seniority, and leave accruals, or in the alternative, front pay in lieu of reinstatement;

11. Restoration of Eligibility for State of Alaska employment and removal of any adverse personnel actions from Plaintiff's employment record, including reversal of the September 16, 2024 notification regarding loss of rehire rights;

12. Prospective Injunctive Relief requiring Defendants to implement comprehensive anti-retaliation policies protecting employees who file APS reports or raise patient safety concerns, provide mandatory training for all supervisors and administrators on whistleblower protections, ADA accommodation procedures, and FMLA compliance, establish clear protocols for investigating and addressing workplace harassment complaints, and create an independent reporting mechanism for patient safety concerns and mandatory reporting issues;

13. Policy Reform requiring the State to develop and implement written policies ensuring that employees who fulfill mandatory reporting obligations are protected from retaliation and that reasonable accommodations are provided without regard to the employee's engagement in protected activities;

**E. ATTORNEY'S FEES AND COSTS**

14. Attorney's Fees and Costs pursuant to 42 U.S.C. § 1988 for civil rights violations, 29 U.S.C. § 2617 for FMLA violations, Alaska statutory provisions for civil rights violations, and other applicable fee-shifting statutes;

**F. ADDITIONAL RELIEF**

15. Pre- and Post-Judgment Interest at the applicable legal rate;

16. Such other and further relief as this Court deems just and proper to remedy the constitutional and statutory violations and prevent their recurrence.

COMPLAINT FOR DAMAGES: LITTLE V. SOA, ET AL.                                    PAGE - 20 -

DATED this 2nd Day of September, 2025.

By: /Isaac D Zorea
Isaac Derek Zorea
ABA No. 0011090
Counsel for Sheila Little

COMPLAINT FOR DAMAGES: LITTLE V. SOA, ET AL.

PAGE - 21 -